# SUPREME COURT OF TENNESSEE

FOR THE

WESTERN DIVISION.

JACKSON, APRIL TERM, 1914.

(*Continued from Vol.* 129.)

McCommon *v.* State.

(*Jackson.* April Term, 1914.)

1. **HOMICIDE. Indictment. Issues, Proof, and Variance.**
Const. art. 1, sec. 8, providing that no man shall be taken or imprisoned, etc., but by the judgment of his peers or the law of the land, section 9, providing that in criminal prosecutions the accused has the right to be heard and to demand the nature and cause of the accusation, Shannon's Code, sec. 7077, requiring the facts constituting the offense to be stated in the indictment in ordinary and concise language, without prolixity or repetition, and section 7080, requiring the act or omission charged to be stated with such degree of certainty as to enable the court to pronounce judgment upon a conviction according

130 Tenn.]                    (1)

to the right of the case, were not violated where, under an indictment charging in one count an assault with a gun with intent to kill, the court admitted evidence of an assault by shooting, and that, the assaulted party having fled, accused pursued her and struck her with the barrels of the gun used as a club, this evidence not showing two offenses, but one offense, composed of different acts done pursuant to one intent and as a part of one assault. (*Post*, pp. 5-7.)

Cases cited and approved: Hughes v. Commonwealth, 31 L. R. A., · 693; State v. Sampson, 42 L. R. A., 907.

Case cited and distinguished: Stevens v. McClaughry, 207 Fed., 18.

2. CRIMINAL LAW. Appeal. Review. Invited error.

Where, under an indictment in one count for assault with a gun with intent to kill, evidence was introduced of an assault by shooting, and that accused pursued the assaulted party, and struck her with the barrels of the gun used as a club, and accused made no motion to require the State to elect upon which phase of the evidence it would ask a conviction, but, on the contrary, introduced evidence by way of defense as to each of the acts, he acquiesced in the State's treatment of the facts as showing but one transaction, and could not complain on appeal. (*Post*, pp. 7-9.)

Case cited and approved: Forrest v. State, 81 Tenn., 105; Givens v. State, 103 Tenn., 665; Scruggs v. State, 66 Tenn., 38.

3. HOMICIDE. Instruction. Conformity to Indictment.

Where, under an indictment charging an assault with gun with intent to kill, evidence was introduced of an assault by shooting, and that accused pursued the assaulted party, and struck her with the barrels of the gun used as a club, an instruction that, if the proof showed beyond a reasonable doubt that accused committed an unlawful assault at either of such times or in either of the ways mentioned, he would be guilty, was not erroneous. (*Post*, pp. 9-11.)

Case cited and distinguished: Holt v. State, 107 Tenn., 540.

4. **INDICTMENT AND INFORMATION.**   Duplicity.   Separate acts constituting one offense.

Where an assault with intent to kill is composed of several different acts done by the same defendant in prosecution of his criminal intent, it is not necessary that each act so done should be made the basis of a separate indictment or a separate count.   (*Post, pp.* 11-17.)

Codes cited and construed:   Sec. 6467 (S.); secs. 7077, 7080 (S.).

Case cited and distinguished:   State v. Ladd, 32 Tenn., 228; Witt v. State, 46 Tenn., 8.

Cases cited and approved:   Pearce v. State, 33 Tenn., 65; Cornell v. State, 66 Tenn., 520; Womack v. State, 47 Tenn., 510; Phillips v. State, 85 Tenn., 551; Kannon v. State, 78 Tenn., 390; Fowler v. State, 50 Tenn., 154.

5. - **HOMICIDE.**   Assault with intent to kill.   Indictment.

An indictment charging that accused willfully, etc., assaulted D. with a gun, with the felonious intent to kill her and commit murder in the first degree, was not insufficient because of its failure to describe the weapon, how it was used, or to charge that the gun was loaded.   (*Post, p.* 17.)

Cases cited and approved:   Bass v. State, 65 Tenn., 588; Hobbs v. State, 121. Tenn., 413.

6. **HOMICIDE.**   Assault with intent to kill.   Evidence.

On a trial for assaulting, with intent to kill, a woman between whose family and the family of accused bad blood had been engendered by her claim that accused's son seduced her under a promise of marriage, evidence as to sexual intercourse between her and the son, her pregnancy, that the son left the county the morning after the baby was born, that she did not know where he was, and that the baby lived only a short time, and died before the assault, was competent.   (*Post. pp.* 17,18.)

7. **CRIMINAL LAW.**   Reservation of grounds of review.   Motion for new trial.

Under the express provisions of Supreme Court rule 14, subd. 5 (126 Tenn., 723, 160 S. W. xi), the alleged erroneous admission

McCommon v. State.

of evidence could not be reviewed, where it was not called to the trial judge's attention by the motion for a new trial. (*Post, p.* 18.)

8. HOMICIDE. Assault with intent to kill. Sufficiency of evi-- dence.

On a trial for assault with intent to kill, evidence *held* to make a question for the jury, and to support its verdict of guilty. (*Post, pp.* 18-22.)

9. CRIMINAL LAW. Sentence. Statutory provisions.

Where, on a trial for assault with intent to commit murder in the first degree, the proof showed that the offense was committed March 31, 1913, accused should have been sentenced under the indeterminate sentence law for not less than three nor more than twenty-one years. (*Post, pp.* 22,23.)

FROM MADISON.

Appeal from the Criminal Court of Madison County. —N. R.. Barham, Judge.

C. E. Pigford and H. E. Carter, for appellant.

Wm. H. Swiggart, Jr., Assistant Attorney-General, for the State.

Mr. Justice Buchanan delivered the opinion of the Court.

The indictment was in one count, and charged that on a day (not named) in March, 1913, R. B. McCommon did willfully, unlawfully, feloniously, maliciously,

deliberately, and premeditatedly make an assault upon the body of Miss Esther Derry with a gun, with the felonious intent her, the said Miss Esther Derry, then and there, unlawfully, etc., to kill and murder, and to commit the crime of murder in the first degree, to which indictment, McCommon interposed a plea of not guilty. On the trial there was a verdict of "guilty in manner and form as charged in the indictment," and the jury assessed the punishment at confinement in the penitentiary of the State for a period of seven years, upon which verdict the court (having overruled a motion for a new trial and a motion in arrest of judgment) pronounced sentence in accordance with the verdict from all of which plaintiff in error prayed and was granted an appeal to this court, and has assigned errors.

The first and second assignments of error raise the question that, while the indictment was in one count and charged one offense, to wit, an assault with intent to commit the crime of murder in the first degree upon the body of Esther Derry, yet the defendant was in fact tried upon two separate, distinct, and independent offenses, and the jury were charged by the court in respect of two separate, distinct, and independent offenses, wherefore it is insisted for plaintiff in error that there was a variance between the indictment and the evidence introduced upon the trial of the cause; that the verdict of the jury and judgment of the court cannot be sustained as determining his guilt of either offense, because it is uncertain on which of the

two plaintiff in error was impleaded and of which he was convicted.

To the foregoing points, made by plaintiff in error, the State replies, in substance, that the two phases of the evidence, which plaintiff in error terms distinct and separate offenses are, in fact and in law, but separate parts of a single offense. The two phases of the evidence, while indeed separate acts of the plaintiff in error in point of time, are so connected by a single intent and purpose to do murder in the first degree upon the body of Esther Derry, and so nearly related or closely connected in point of time, as to amount in law to a single and continuing transaction, pursuant to and prompted by single criminal intent. The legal principle relied on by the State is well expressed by a learned author as follows (Wharton on Criminal Law, vol. 1 [11th Ed.] p. 48, section 34):

"No matter how long an offense may take in its perpetration, it continues but one offense. . . . The distinction is this: When the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie."

See, also, the cases cited in notes to *Hughes* v. *Commonwealth*, 31 L. R. A. (N. S.), 693, and *State* v. *Sampson*, 42 L. R. A. (N. S.), 907.

Another illustration of the same principle is stated thus:

"And where a person fires a shot at another under circumstances not justifying it, and this is immediately followed by another shot to prevent the other from getting his pistol to renew an assault under circumstances which would justify it, the whole is to be regarded as a continuing transaction, and, though the latter shot causes the death, the killing cannot be held justifiable as in self-defense." Wharton on Homicide (3d Ed.) section 337, p. 545.

And again:

"The principle upon which the decisions in these cases rest is that two or more separate offenses, which are committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent, which is essential to each offense, are susceptible to but one punishment. The most familiar illustration of the rule is that burglary with intent to commit larceny and larceny committed at the same time and as one continued act do not subject the perpetrator to two punishments, one for the burglary and another for the larceny, because the same criminal intent is indispensable to each, and they are each parts of a continuing criminal act." *Stevens* v. *McClaughry*, 207 Fed., 18, 125 C. C. A., 102.

Looking to the transcript, we see that, on the trial of the cause, the court allowed evidence to be introduced on behalf of the State tending to show a willful, felonious, and premeditated assault by the plaintiff in error upon the body of Esther Derry, with intent to kill and murder by means of pointing at her and dis-

charging with that intent a shotgun loaded with pow-
der and No. 4 leaden shot, which, so discharged, in-
flicted upon her body divers wounds, but did not result
in her death; and, in addition to this evidence, there
was introduced on behalf of the State other evidence
tending to show that, being so wounded, Esther Derry
fled from the spot where she was standing, but, on
reaching a point variously estimated at from 55 to
100 feet from that at which she was standing when
shot, she fell to the ground, and while lying thereon
was pursued by plaintiff in error, who then and there
struck her two blows upon the head with the barrels
of his gun used as a club or bludgeon, inflicting a cut
on the scalp extending to the bone, serious enough to
require a week or ten days to heal.

No motion was made by plaintiff in error at any
time during the trial of the cause that the State be
required to elect upon which of these two phases of the
evidence it would ask for a conviction. On the con-
trary, he saw fit to meet the State's evidence by his
own, which tended to show, by way of defense to what
he now insists was the first assault, that he fired at
Esther Derry only after she had fired four or five shots
at him, and therefore in his proper and necessary self-
defense; that, after firing the first shot, he attempted
to reload the barrel of his gun which had been fired,
and to that end unbreeched the gun, the same being a
double-barrelled shotgun, and placed a cartridge in the
barrel which had just been fired, but on account of
some defect in the mechanism of the gun he was un-

able to rebreech the same; that, in his efforts to effect the latter result, he struck the ground with the stock of the gun, causing the accidental discharge of the cartridge in the barrel which had just been fired, and breaking the stock from the barrels of the gun. Thereupon, with the barrels of the gun in his hand, and leaving the stock at the place where it had been broken, he ran in pursuit of Esther Derry to the point at which she was still lying on the ground, and when near enough to strike her with the gun barrels which he still held in his hand, he asked her what she was there for, and she said she was looking for her brother. Thereupon, he said she had a pistol in her right hand, and was moving it around some, and looked as if she was making some effort to get up, when he, in apprehension that she might shoot him with the pistol, struck her on the head hard enough to keep her from shooting him. Plaintiff in error, in the conduct of his defense, acquiesced in the treatment of the facts by the State as showing one transaction. It is now too late for him to complain. *Forrest* v. *State,* 13 Lea (81 Tenn.), 105; *Givens* v. *State,* 103 Tenn. (19 Pickle), 665, 55 S. W., 1107; *Scruggs* v. *State,* 7 Baxt. (66 Tenn.), 38; Encyc. Pl. & Pr. vol. 10, p. 539.

Upon the evidence disclosing the respective theories of the State and of the defendant as above set out, the court charged the law as the same applied to the first shot and to the blow with the gun barrels. The law was fairly charged as it applied to the theory of the

State and as it applied to the theory of plaintiff in error. In the course of the charge, the court said:

"Now, if the proof shows beyond a reasonable doubt that the defendant did commit an unlawful assault at either of said times or in either of the ways mentioned, the defendant would be guilty of some one of the offenses herein defined, and if the offense was committed in Madison county and State of Tennessee, and before the finding of the indictment, you should convict him."

In this state of the record, it is insisted on behalf of plaintiff in error that the doctrine of the case of *Holt* v. *State,* 107 Tenn., (23 Pickle), 540, 64 S. W., 473, applies. In that case Holt appealed from a judgment of conviction for unlawfully carrying a pistol. The State introduced one witness whose testimony tended to show the commission of that offense at one time and place, and other witnesses whose testimony tended to show a like breach of the law at another time and place. At the conclusion of the whole evidence the defendant moved the court to require the State to elect which of the two imputed infractions the jury should try him for; but the court overruled the motion, and the entire case was submitted to the jury for a verdict. This court held that the action of the trial judge was erroneous, and reversed and remanded the cause for a new trial.

That case and the case at bar are not analogous, if the State's insistence in the present case be sound. In the *Holt Case* the evidence of the State tended to

show two wholly separate and distinct offenses, each committed by the same person but at different times and places. If the State's insistence in the present case be sound, the evidence submitted to the jury and charged upon by the court did not tend to show two separate and distinct offenses committed at different times and places, but, on the contrary, the evidence tended to show one offense, composed, to be sure of different acts, done by the same person, but done by him pursuant to one intent, one purpose and design, and as a part of one assault, with intent to commit murder in the first degree. The present case, if the insistence of the State be sound, is not one where the jury was left free to elect which of several distinct and independent offenses it would find the defendant guilty of under the evidence, but is one where all the facts in a continuous transaction were laid before the jury for their consideration, and their verdict based upon those facts may have been founded either upon the first shot fired by plaintiff in error or upon the blow with the barrels of the gun, and yet be a correct response to the one count in the indictment.

It is true, as said by this court in *Holt* v. *State,* supra, that:

"No authorities need be cited for the proposition that a defendant cannot be legally tried for two violations of the criminal law, when he has been impleaded for but one. That proposition is fundamental and axiomatic."

But it is not true that, where an assault with intent to commit murder in the first degree is composed of several different acts done by the same defendant in prosecution of his criminal intent, and each act so done must be made the basis of a separate count in the same indictment or charged against him by separate indictment.

Section 7077 of Shannon's Code provides that the statement of the facts constituting the offense in the indictment shall be in ordinary and concise language, without prolixity or repetition. And by section 7080 of the same Code, it is provided:

"The act or omission charged as the offense shall be stated with such degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

Article 1, section 8, of the Constitution of the State provides:

"No man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

And section 9 of the same article provides:

"That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him," etc.

It is difficult to see that the plaintiff in error was deprived of any right he possessed under the fore-

going provisions of the Constitution and statutes. It is true that the indictment was in one count, charging him with the commission of an assault with a certain gun with intent to kill and murder and to commit murder in the first degree. By this indictment he was informed of the nature and cause of the accusation against him, of the name of the person upon whose body it was charged that he had committed the assault and the time at which the assault was alleged to have been committed was sufficiently averred as being on the —— day of March, 1913. To the sufficiency of this indictment he made no question, by motion to quash or otherwise.

The statute defining the offense for which plaintiff in error was indicted is section 6467 of Shannon's Code, and reads as follows:

"Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, or shall administer or attempt to give any poison or potion for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the penitentiary not less than three nor more than twenty-one years."

In *State* v. *Ladd,* 2 Swan (32 Tenn.), 228, Judge Caruthers, delivering the opinion of the court, said:

"It is a general rule that where an offense is created, or where it is defined, and its punishments enlarged by statute, an indictment, setting forth the crime in the words of the statute, is sufficient, and indeed the safest and preferable mode of description.

Archbold says, at page 52: 'It is better to pursue strictly the words of the statute.' It is true that if the statute does not set forth all the ingredients of the offense, or enough to constitute the crime, the indictment must add them. But that is not this case. Here the description of the crime is complete in every essential particular. Of what advantage to the defendant would it be to name and describe the weapon with which he is shot or stabbed? It is everywhere decided, even in cases of murder, that the kind of instrument charged need not be proved, but the proof of any other instrument of the same class will sustain the indictment. Archb. Cr. Pl. 136. If the act is charged to have been done with a pistol, it will do to prove that it was with a gun or cannon; or if the charge of killing be with a penknife, it will be sustained by proof that it was with a butcher knife, or bowie knife, etc.

"The kind of weapon is not needful for notice to defendant, because, in the cases I have put, he would not only be aided in making out his defense, but would be actually misled by the indictment. The author to which we have referred (136) says: 'There is a particularlarity required in an indictment for murder that it would be ridciulous to account for and justify.' And we might add, as to the effect of this particularity, except so far as it is necessary for the ends of proper defense, by a substantial description of the essentials of the crime imputed, it only tends to facilitate the escape of offenders from the just punishment of their crimes, and should not be favored. In times past, the

adherence to strict and unnecessary technicalities to rescue criminals has been a reproach to the administration of justice, brought the law into contempt, and encouraged crime. Shall we go any further, then, in shielding offenders, when they have, as in this case, upon a fair trial, been pronounced guilty by a jury, by opening another avenue to them for escape, upon what must be regarded as a technicality? We are unwilling to do so, without some positive rule of law constraining us.''

In the brief for plaintiff in error we are referred to *Pearce* v. *State,* 1 Sneed (33 Tenn.), 65, 60 Am. Dec. 135; *Cornell* v. *State,* 7 Baxt. (66 Tenn.), 520; *Womack* v. *State,* 7 Cold. (47 Tenn.), 510; *Phillipps* v. *State,* 85 Tenn. (1 Pickle), 551, 3 S. W., 434; *Kannon* v. *State,* 10 Lea (78 Tenn.), 390; *Fowler* v. *State,* 3 Heisk. (50 Tenn.), 154; but we find in these cases no conflict with the views we have above expressed.

We are also cited to the case of *Lucius Witt* v. *State,* 6 Cold. (46 Tenn.), 8, where it is said:

''Where the indictment charges the killing to have been done with a particular weapon, it is not permitted to prove that it was done with a weapon of a totally diverse character. 'Thus, evidence of a dagger will support the averment of a knife; but the averment of a knife will not support the averment of a pistol.' ''

The above quotation does not support the insistence of the plaintiff in error in the present case. The indictment here does not aver the assault to have been made by discharging the gun. The averment is merely that

the assault was made with a certain gun. This was
notice to plaintiff in error sufficient, as we think, under
our Constitution and statutes, to sustain evidence such
as was admitted upon his trial, to wit, in the first place,
that he committed an assault by pointing and discharg-
ing the gun at his intended victim pursuant to his in-
tent to kill and murder and commit murder in the first
degree and, second, not having accomplished his pur-
pose by the first act, that he followed her and inflicted
a second wound, using both barrels of the gun as a
bludgeon. Undoubtedly here were two acts, *vi et armis,*
in each of which the weapon named in the indictment
was used in a different manner, but the dominant im-
pulse was single and continuous.

By this indictment, plaintiff in error had notice as
we think that the State, on the trial of the cause, would
place in evidence before the jury every use made by
him of the gun as an instrument in carrying out his
purpose to commit murder in the first degree upon the
body of Esther Derry. The fact that the entire gun
and the charge of powder and shot in one barrel there-
of were employed in one part of the assault, and that
only the barrels of the gun as a bludgeon were used
in the other part of the assault was clearly within the
knowledge of plaintiff in error, and although it is true
that when the stock and barrels were broken apart
the barrels were a bludgeon, and not an entire gun in
the most strict sense, yet it is absurd to say that the
indictment was no notice that the State would show
by its evidence both parts of the assault.

We therefore overrule the first and second assignments of error.

By the third assignment of error it is insisted that the court erred in overruling plaintiff in error's motion in arrest of judgment. This insistence is based on the view that the indictment is insufficient:

"Because it fails to describe the weapon, how used, or that the gun was loaded, and it is not sufficient to fully inform the plaintiff in error of the nature and cause of the accusation against him."

To sustain this assignment of error, we are referred to the case of Bass v. State, 6 Baxt. (65 Tenn.), 588. What we have already said practically disposes of this assignment of error, but we add Bass v. State, supra, was overruled by this court in the case of Hobbs v. State, 121 Tenn. (13 Cates), 413, 118 S. W., 262, 17 Ann. Cas., 177, and the grounds of the motion in arrest were not specifically stated in the motion in the trial court. See subsection 5, rule 14, 126 Tenn. 723, 160 S. W. xi.

There is no merit in the fourth assignment of error, which complains of the admission of the following testimony of Esther Derry over the objection of the plaintiff in error, and found at page 24 of the transcript:

"After the engagement, Ralph McCommon had carnal knowledge of me, and the intercourse was tolerably frequent. I then became pregnant by Ralph McCommon. It was in the month of May that I ascertained that I was pregnant.

"Ralph left the county the morning after the baby was born, but I did not know where he had gone. That was the 6th of January. . . . The baby lived only seven weeks. I had already lost my baby when I was shot."

It does not appear that the matter complained of in this assignment was properly called to the attention of the trial judge by the motion for a new trial. It therefore results that, under the fifth subdivision of the fourteenth rule of this court in respect of the assignment of errors, the fourth assignment of error must be overruled.

The fifth and last assignment of error is based mainly on the insistence that the evidence greatly preponderates against the verdict of the jury. Bad blood had been engendered between the plaintiff in error and his family and Esther Derry and her father and brother, on account of a claim made by her to the effect that Ralph McCommon, son of the plaintiff in error, had, under promise of marriage, seduced her and became the father of her illegitimate child. The conduct of Esther Derry and her father and brother had been such as to arouse reasonable apprehension on the part of plaintiff in error that it was the purpose of Esther Derry to force Ralph McCommon to marry her, and in the event of failure that violence would be done by the Derrys to Ralph McCommon. To avoid the threatened danger to the son of plaintiff in error, he had been sent away from home. Several times prior to the day of the tragedy, Esther Derry had been dis-

covered watching the premises of plaintiff in error, and her father and her brother had visited those premises prior to that time, manifestly in search of Ralph McCommon. On the day of the tragedy, plaintiff in error was plowing in his field several hundred yards distant from the place where the tragedy occurred, and while so engaged he was notified that Esther Derry was again watching his premises from a point on Sam Black's land, which adjoined the land of plaintiff in error and one of his neighbors named Robinson. Upon receiving this information, plaintiff in error abandoned his plowing and went to his home, where he secured his double-barreled breech-loading shotgun, which was loaded with No. 4 shot. In addition to the loads in the gun, plaintiff in error also secured several extra cartridges, and with these and the gun proceeded to a branch or ditch which divided his land from that of Robinson, and crossed the boundary line between the lands of the plaintiff in error and Robinson and the land of Sam Black. This ditch was from four to six feet deep, and down this ditch for several hundred yards, leading toward the point where Esther Derry was located on Sam Black's land, plaintiff in error walked until he reached a point very near the boundary line between Sam Black's land and his own and Robinson's land. He was then quite near the point where Esther Derry was standing in the field of Sam Black. He proceeded to a point near a wire fence which separated his and Robinson's land from the land of Sam Black, and, having reached this point, he testifies in sub-

stance that he stopped and inquired of Esther Derry what she was doing there, whereupon he says that she replied by shooting at him five times with a double-action, 38 caliber, six-inch barrel pistol. He says she began to shoot while she was sitting down, and rose up and continued shooting at him, holding the pistol in both hands, and that about the time she fired her last shot he fired at and shot her with the shotgun, which was loaded with small shot, striking her in the left arm and side. He claims to have been under the apprehension that she was accompanied by her brother and father, and that, after firing the first shot at her, he immediately reloaded his gun in order to defend himself in case the father or brother should be present and assail him; that, after reloading his gun, he could not breech it on account of the fire pin or plunger striking the end of the shell, and in the effort to breech the gun it struck against the ground, breaking off the stock and exploding the shell, against which the fire pin or plunger had caught; that he then took the barrel of his gun, leaving the stock, and crossed over or under the wire fence and ditch, in order, as he says, to get her pistol as evidence that she had shot at him; that, when he came up to where she had fallen, he asked her what she was doing there, and she said she was looking for her brother. He testified that she had the pistol in her hand on the ground, and was maneuvering with her hand about the pistol, and that he then struck her on the head with the gun barrel to keep her from shooting him; that he did not intend to strike

her hard, and did not intend to kill her, and did not carry the gun to the place where she was, intending to shoot her, and would not have carried his gun to that place if he had known that her father and her brother were not there.

Esther Derry testifies that she went to Sam Black's field, and was sitting on the bank of the ditch, trying to recognize a boy who was plowing in the field with plaintiff in error, some 500 or 600 yards from the place where she was sitting; that she wanted to see Ralph, because he had promised to marry her, and she wanted him to fulfill his promise; that she was dressed in a blue calico dress with a man's coat on, had a white scarf on her head, and had a pistol; that she saw the plaintiff in error when he left his plowing, and the next time she saw him he was coming toward her up the gully where she was sitting; that he came up close to the wire fence; that she was still sitting at that time; that he told her to shoot him, these were his first words. She said: "I do not want to shoot you, Mr. McCommon. I have nothing against you." He then said: "Damn you, if you don't shoot me, I will shoot you." He then raised his gun up and pointed it toward her, whereupon she shot at him five times. She says that she was standing while she was shooting; that she was rattled and frightened; that he shot her in the left breast and left side, and she then ran from him; that she saw Sam Black and his people plowing, and ran toward them, and while she was running he shot her again with the shotgun and hit her in the left side;

that she then fell; that she was running to get away from him; that she does not remember whether he came to where she was or not after she fell; that she was unconscious when she fell, and did not know what took place after the second shot; that she remained in the hospital two weeks, and was at the time of the trial unable to use her arm, and was crippled in her left side.

There is much more of her testimony, and there is also in the transcript the evidence of Sam Black, and of his son and daughter. Without going into the evidence of the witnesses last named, it suffices to say that, upon the entire proof in the cause, there was clear conflict as to the truth. It was the peculiar province of the jury to determine that conflict. They have determined it in favor of the truth of the evidence of Esther Derry, and we do not think that the evidence as a whole preponderates against the verdict of the jury.

Under a subdivision of the fifth assignment of error, it is insisted that the verdict of the jury was contrary to the law; that the Attorney-General and his associates made improper and illegal arguments on the trial of the cause, and that the verdict of the jury was not the true verdict of the whole jury.

It is unnecessary to enter into a discussion of these matters. We have examined each and all of them, and find them to be without merit.

There is no error in the record, except that, as this offense is shown by the proof to have been committed

McCommon v. State.

on March 31, 1913, the sentence should have been molded in accordance with the indeterminate sentence law, so as to adjudge that plaintiff in error be imprisoned in the penitentiary for a term of not less than 3 nor more than 21 years, as provided by that statute; and, modified as above indicated, the judgment of the circuit court is affirmed.