IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2000 Session

## STATE OF TENNESSEE v. DAVID ALAN HURST

**Appeal from the Circuit Court for Madison County**
**No. 98-749   Franklin Murchison, Judge**

---

**No. W1999-01860-CCA-R3-CD - Decided August 3, 2000**

---

The defendant appeals his convictions for two counts of aggravated assault and two counts of simple assault and the consecutive five-year sentences imposed for the aggravated assaults. The defendant raises the following issues in this appeal: 1) whether evidence presented at trial was sufficient to sustain the guilty verdicts, and 2) whether the trial court erred by imposing consecutive sentences for the two aggravated assault convictions. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, David Alan Hurst.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Donald H. Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant appeals his convictions for two counts of aggravated assault and two counts of simple assault and the consecutive five-year sentences imposed for the aggravated assaults. The defendant contends the evidence presented at trial was insufficient to sustain the guilty verdicts, and that the trial court erred by imposing consecutive sentences for the two aggravated assault convictions. We affirm the judgment of the trial court.

## FACTS

The State's proof revealed the following:

On July 11, 1998, the defendant and his wife, Jan Hurst (hereinafter "Hurst"), were having a cookout. During the course of the evening, the defendant called Mary Joyce Harris and Shelva Jones and invited them to attend the cookout. During the telephone conversation with Harris, the defendant asked Harris to stop by a store on her way over to his house and purchase a bottle of rum. Harris agreed, but informed the defendant that he would have to pay her back.

Harris and Jones arrived at the defendant's house around 11:00 p.m., at which time the defendant took the bottle of rum into the kitchen and began to make pina coladas for Harris, Jones, Hurst, and himself. Between midnight and 1:00 a.m., Harris presented the defendant with a receipt for the rum. The defendant became violent, telling Harris that she would "get [her] g--d--- mother f---ing money whenever [he] decide[d] to give it to [her]."

When the defendant became violent, Harris and Jones decided to leave the defendant's house. As Harris and Jones got into the car, Hurst got into the back seat and asked Harris to drop her off at her parents' house. The defendant then approached the car. An argument ensued between the defendant and Harris, which ultimately led to the defendant pulling Harris out of the car. Harris was then thrown to the ground, and the defendant began to hit her with his fists and kick her in the face. The defendant then returned to the car and attempted to drag Hurst out of the backseat. While Hurst clung to the door handle of the vehicle, the defendant began to hit her with his fists and kick her in the face and chest.

After the defendant stopped his attack on the ladies, he went back into the house. While the defendant was in the house, Harris and Hurst crawled into the car to flee, fearing that the defendant was going to kill them. As the two were driving away from the defendant's house, the defendant got into his truck and chased them. When the defendant caught up with their car, he rammed his truck into the car twice. The back window shattered and the rear end of the car was crushed.

The vehicular attack on the two women ended when Harris pulled into a driveway, and the defendant sped away. Seconds later, Harris saw a police car and flagged it down. The defendant was not seen again that night, but was arrested the next day.

Harris and Hurst sustained extensive injuries to their heads, necks, and arms. In addition, Harris required sixty stitches to close one laceration below her mouth, and Hurst sustained a laceration above her eye.

The defendant was indicted and convicted on two counts of aggravated assault (with a deadly weapon), both Class C felonies, and two counts of simple assault, both Class A misdemeanors. The defendant was subsequently sentenced to two consecutive five-year sentences for the aggravated assaults and two 11 month and 29 day sentences for the simple assaults, the latter two sentences running concurrently with each other and the aggravated assault sentences.

-2-

## DUAL CONVICTIONS - SIMPLE ASSAULT AND AGGRAVATED ASSAULT

We first address whether the defendant can be convicted of both simple assault and aggravated assault on each of the victims. A double jeopardy analysis of this issue requires a careful examination of the facts and circumstances of each case. State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975). This court has previously concluded that separate injuries inflicted upon an aggravated assault victim, both inside the house as well as outside the house after the victim attempted to escape, were part of the "same" offense, thereby precluding separate convictions. State v. Pelayo, 881 S.W.2d 7, 13 (Tenn. Crim. App. 1994). However, Pelayo noted that the actions of the defendant were only "separated by a few seconds and feet," and separate blows inflicted on the same victim at times and places more distinct may justify multiple convictions. Id.

We conclude that the temporal and geographic factors in the subject assaults justify multiple convictions. The simple assaults, consisting of the beating of each victim with the fists as well as kicking, took place just outside the residence of the defendant. Both victims were then able to leave the premises in an automobile after the defendant went inside the house. The defendant then got into his truck, which he eventually used as a deadly weapon, and gave chase to the two victims. The victims drove some distance before the defendant rammed them with his truck. Under these circumstances, convictions for both the initial simple assault and the subsequent aggravated assault on each victim are justified.

## I. SUFFICIENCY OF EVIDENCE

### A. Standard of Review

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

### B. Analysis

The defendant contends that evidence presented at trial was insufficient to support his two convictions for aggravated assault and two convictions for simple assault.    We disagree.

A person commits assault who:

> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
>
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
>
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a).  Further, a person commits aggravated assault when that person "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon[.]"  See Tenn. Code Ann. § 39-13-102(1)(B).  An automobile can be a deadly weapon.  See State v. Tate, 912 S.W.2d 785, 787-88 (Tenn. Crim. App. 1995).

Harris testified that the defendant drug her out of her car, threw her on the ground, and beat her with his fists, and kicked her in the face.  Hurst, the second victim, testified that she witnessed the defendant severely beating Harris.  Hurst further testified that after the defendant stopped his attack on Harris, the defendant severely beat her with his fists and repeatedly kicked her in the face and chest.  In addition to testimony given by the victims, two other witnesses testified that they saw the defendant beating the victims.

Harris and Hurst also testified that they knew the defendant was chasing them in his truck. Harris testified that as a result of the car being rammed from behind by the defendant's truck, she was again placed in great fear of additional injury.  The jury could further conclude that Hurst was also in great fear of imminent bodily injury.

Numerous photographs revealed the severity of the beatings inflicted upon the victims by the defendant.  Further, photographs also showed the damage done to the car when the defendant rammed his truck into it two times.

The defendant testified that he was hit by something in the back of the head and "just went nuts . . . [and then] went to swinging, and during everything, [he] just sort of blacked out."  The defendant claimed that his actions were predicated upon self-defense.  He also admitted to having struck the back of the car, but stated that it was not intentional.  The jury obviously did not accredit the defendant's self-defense claims, nor did they accredit the defendant's claim that his truck accidentally struck the back of the car.  The rejection of the defendant's testimony was the jury's prerogative.

-4-

After a review of the evidence presented at trial, we conclude that the evidence was sufficient to support the defendant's convictions. This issue is without merit.

## II.  SENTENCING

The defendant contends that the trial court erred by imposing consecutive sentences for the two aggravated assault convictions. We disagree.

### A.  Standard of Review

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

. . . .

> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; [or]
>
> (6) [t]he defendant is sentenced for an offense committed while on probation[.]

Tenn. Code Ann. § 40-35-115(b). Furthermore, in the event the trial court finds the defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

### B.  Analysis

First, the trial court relied upon the defendant being on community corrections at the time of these offenses as one basis for consecutive sentencing. See Tenn. Code Ann. § 40-35-115(b)(6). However, community corrections cannot be treated as the equivalent of probation in order to impose consecutive sentences under Tenn. Code Ann. § 40-35-115(b)(6). State v. Pettus, 986 S.W.2d 540, 545 (Tenn. 1999). As such, the trial court erred in treating community corrections as the equivalent of probation in reaching its decision to sentence the defendant to consecutive sentences.

The trial court also found the defendant to be a "dangerous offender." See Tenn. Code Ann. § 40-35-115(b)(4). The trial court examined the severity of the assaults and concluded that the defendant had little or no regard for human life, and had no hesitation about committing a crime in which the risk to human life was high. See id. The trial court further considered the severity of the offenses committed by the defendant and implicitly found the need to protect the public from further

criminal conduct. See Wilkerson, 905 S.W.2d at 939. As a result of its analysis, the trial court concluded that the imposition of consecutive sentences was warranted and that the aggregate sentence of ten years was reasonably related to the severity of the offenses. We agree.

While the trial court erred in equating community corrections with probation, the trial court properly found the defendant to be a dangerous offender. This was an ample basis for the imposition of consecutive sentences.

## CONCLUSION

Based upon our review of the trial record, sufficient evidence was presented at trial to support the defendant's convictions for two counts of aggravated assault and two counts of simple assault. Further, the trial court's imposition of consecutive sentences was proper. The convictions and sentences imposed by the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE