IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2009 Session

**STATE OF TENNESSEE v. RONALD DILLMAN, JR.**

**Appeal from the Criminal Court for Claiborne County**
**No. 13,385     E. Shayne Sexton, Judge**

**No. E2009-00648-CCA-R3-CD - Filed May 7, 2010**

The Defendant, Ronald Dillman, Jr., was convicted of especially aggravated burglary, a Class B felony, aggravated assault, a Class C felony, robbery, a Class C felony, attempted aggravated assault, a Class D felony, and assault, a Class A misdemeanor. He was sentenced as a Range II, multiple offender to serve eighteen years for especially aggravated burglary, eight years for aggravated assault, eight years for robbery, and five years for attempted aggravated assault. He was sentenced to serve eleven months and twenty-nine days for the misdemeanor conviction. All sentences were concurrent, resulting in an effective eighteen-year sentence. On appeal, he challenges the sufficiency of the evidence, the trial court's denial of his motion for judgment of acquittal, the trial court's approval of the verdict in its role as thirteenth juror, and the exclusion from evidence of Robert Collins's plea agreement document. We affirm the convictions, but we vacate the judgments for aggravated assault and attempted aggravated assault and remand the case for entry of a judgment merging the attempted aggravated assault conviction with the aggravated assault conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed in Part and Vacated in Part; Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellant, Ronald C. Dillman, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; William Paul Phillips, District Attorney General; and Jared Ralph Effler, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The Defendant's convictions relate to his assault of his ex-girlfriend, Alexandria Robinson, and her friend Patrick O'Neal. The assaults took place inside and outside Ms. Robinson's home. Mr. O'Neal's truck was also stolen during the course of the events.

Claiborne County Sheriff's Department Detective Melvin Bayless testified that on the night of October 25, 2007, he was called to go to Upper Caney Valley Road. He said that when he arrived, an ambulance was already there to transport Patrick O'Neal to the hospital. He said Mr. O'Neal had been badly beaten, had blood on him, had severely swollen hands, looked as if he had been crawling in weeds, and had "hitchhikers" all over his clothes.

Detective Bayless testified that he learned from another officer that a second victim, Alexandria Robinson, was at her father's home nearby. He said he went to the home, where he found Ms. Robinson with redness around her left eye, swelling and the beginning of a bruise on her face, red marks on her arm, and a small cut on one of her fingers. He said she reported having "several lumps on her head."

Detective Bayless testified that he also went to Ms. Robinson's home to investigate. He said that when he arrived, the side door of the home was open. He stated that there were two front doors and that the front door on the right had broken glass and had been kicked in. He said he found a large stick lying in the side doorway. He said there were two beer bottles next to a heating and air unit at the back of the house. He said one was open. He said the one that was full was still cold. He also found a child's "sippy cup" and a yellow key ring with a key near a large tree at the end of the driveway.

Detective Bayless testified that when he entered the home, he noted that the front door that appeared to have been kicked in had been screwed shut and was ripped from the wall. He said the bedroom was in disarray. He saw another piece of a stick in the living room. He said he compared this stick with the other one he collected and they appeared to have been broken from each other. He also saw small drops of blood on the living room carpet. There were blood drops in the kitchen and blood on the door frame that looked like it had been touched with a person's hand.

Detective Bayless testified that he talked to Robert Collins at the house where the ambulance had parked. He said he searched for the Defendant that night but did not find him. He said that a day or two later, the authorities received an anonymous tip that the Defendant was staying with family in Virginia. Detective Bayless said he and another officer went to Virginia and after another anonymous call and assistance from the Virginia authorities, they found the Defendant in a back bedroom of a home.

Detective Bayless testified that he first saw Patrick O'Neal's pickup truck the day after the crimes. He said that it had been wrecked and that it had been towed to Petty's Wrecker Service.

Detective Bayless testified that he took photographs of Mr. O'Neal's injuries. He also took photographs of Ms. Robinson's injuries. He testified about the condition of Ms. Robinson's home using photographs. He acknowledged that he did not attempt to collect fingerprint evidence and explained that he did not think it was necessary. He also acknowledged that he could not state at what time he saw "sweat" on the beer bottle.

Doctor Phanel Basile testified as an expert witness in emergency medicine. He said that he treated Patrick O'Neal in the emergency room at Claiborne County General Hospital on the night of October 25 and 26, 2007. He said Mr. O'Neal had a scalp laceration, a contusion, abrasions, a puncture wound on the left forearm, swollen hands, and a fractured right hand. He said the scalp laceration was treated by applying staples to stop the bleeding. He said such an injury would come from being hit with a great deal of force by an object, not a fist, and would be painful for the victim. He said the wounds on Mr. O'Neal's hands appeared to be defensive wounds and would be consistent with Mr. O'Neal trying to protect his head when being hit by the stick found at the scene. He said the victim was complaining of a severe headache and was admitted to the hospital due to the head injury.

Doctor Basile acknowledged that he did not take any blood or tissue samples from Mr. O'Neal. He did not recall whether he suspected Mr. O'Neal of being under the influence but that the usual protocol would be to draw a blood sample in this situation.

Alexandria Robinson testified that she was living on Upper Caney Valley Road on October 25 and 26, 2007. She said her four-year-old son lived with her. She said that the Defendant had been her boyfriend but that they had been arguing for about a week. She said he had lived at her home until a week before the date of the crimes but was no longer living there when he committed the offenses.

Ms. Robinson testified that she knew Robert Collins, who she said lived with the Defendant's grandmother. She said she had never had any disagreements with Mr. Collins.

Ms. Robinson testified that at the time of the crimes, the Defendant owned a white Ford Probe. She did not know whether Mr. Collins owned a car.

Ms. Robinson testified that she knew Patrick O'Neal because she cut his hair. She said she saw him on October 25 at Robert Smith's house. She said she was at Mr. Smith's home cutting his son's hair. She said she arrived around 8:00 or 9:00 p.m. and left around

11:00 or 11:30 p.m. She stated that while she was at Smith's house, the Defendant was parked in the middle of the road in his 1993 Ford Probe. She said she guessed he was following her around. She said she might have yelled to the Defendant to leave.

Ms. Robinson testified that she and her son left in her car and that Mr. O'Neal followed her home. She said that she unlocked the side door of her home and went back to get her son out of the car. As they were going to the house, Mr. Collins and the Defendant came from behind her home. She said they started hitting Mr. O'Neal with a large stick. She said the Defendant took her into her house and asked, "What are you doing?" and cursed at her. She said that as she was carrying her son into the house, the Defendant pushed her and she fell on top of her son. She said the Defendant continued cursing her and hit her five to ten times on the back of her head, her face, and her arms. Ms. Robinson stated that she had a black eye, knots on the back of her head, and bruises on her face and arm.

Ms. Robinson testified that after the Defendant assaulted her, he ran outside and then he and Mr. Collins dragged Mr. O'Neal into her house. She said both the Defendant and Collins were kicking O'Neal and that Collins was holding the stick. She said she saw the Defendant kick O'Neal five or six times. She said the Defendant was screaming and cursing and said, "I'm gonna kill you," or "[Y]ou're gonna wish you were dead," or something to that effect. She said she began screaming for the men to leave her house. She said the Defendant asked her what she was doing with a "nasty old man," called her a name, and cursed at her.

Ms. Robinson testified that Mr. O'Neal ran out the door and that Mr. Collins and the Defendant chased him. She said she locked the door when the men ran out. She said that the Defendant returned and tried to kick in the door but was unsuccessful and that he crawled into the house through her son's bedroom window. She said that she took her son into her bedroom and locked the door, that the Defendant tried unsuccessfully to kick in the bedroom door, and that the Defendant went outside and broke the window of an outside door to the bedroom. She said the door had been screwed closed but that the Defendant kicked it in.

Ms. Robinson testified that the Defendant entered her bedroom and hit her again. She said he told her that he would end up killing her one day. She said she lay on top of her son to protect him. She said the Defendant was hitting her on the back of her head but then started crying and said he would kill himself. She said he slit his wrists with his pocketknife and then cut her ring finger as she smacked the knife away from her face. She said that Mr. Collins returned to the house and said Mr. O'Neal had escaped and that the two men ran out of the house. She said she assumed they left in Mr. O'Neal's truck and also assumed that the Defendant had parked across the road at a church.

Ms. Robinson testified that the Defendant had broken her cell phone by slinging it against the wall during the earlier assault. She said she went to her father's home to call 9-1-1.

Ms. Robinson testified that she spoke to the Defendant by phone after his arrest. She said he apologized to her and said he did not remember the incident.

Ms. Robinson testified that her home and property were damaged. She said a door was "busted in" and the glass broken, her CD changer was broken, and her bedroom was in disarray.

Ms. Robinson testified that the Defendant drank beer. She said he drank Busch or Budweiser.

Ms. Robinson acknowledged on cross-examination that the Defendant had lived with her until a week before the crimes. She said that the couple previously had talked about getting married but that they had been fighting at the time of the crimes. She said that her mother owned the home in which she lived and that the Defendant did not pay rent.

Ms. Robinson acknowledged that she did not go to a doctor for her injuries. She said, however, that her mother was a nurse.

Ms. Robinson acknowledged that she had been convicted of theft of property under $500 and that the original charges had been aggravated burglary and forgery. She also admitted that she had a probation violation as a result of failing a drug test. She denied that she had been offered any incentive to testify.

Patrick O'Neal testified that he was at Robert Smith's house most of the day on October 25, 2007. He said Alexandria Robinson arrived about an hour before dark to cut Mr. Smith's son's hair. He said he was outside and saw a person he identified as Ms. Robinson's boyfriend "sitting out front." He said he told Mr. Smith, who came outside, and the Defendant asked for "Alex." He said Smith informed the person that Robinson did not want to talk to the person. He said the person drove off in a little white car.

Mr. O'Neal testified that later in the evening he went to Ms. Robinson's home. He said he drove his truck and Robinson drove herself and her three-year-old son in her car. He said he parked in the driveway next to Robinson's car. He said that before he was able to close the door of his truck, he heard a noise. He said he went to the back of his truck and heard, "Hit him, hit him." He turned and saw something coming toward him and was hit on the head. He said that he was hit with objects from both sides and that two men were

standing beside his truck yelling, "Where's the keys, where's the keys?" while they rifled through the inside of the truck. He said that one of the men told him to stand up but that he could not push up because his hands were injured. He said that when he got up, he was hit a few more times. He said he ran toward the road but slipped in the ditch and fell into the road.

Mr. O'Neal testified that the next thing he remembered was being dragged up the driveway and into the house. He said one of the men and Ms. Robinson were fighting. He said he tried to stand up and this man kicked him. He said he was hit with something that pierced his arm. He said the men were yelling, "Kill him." He also said that he was hit with a tire iron. He said that he was able to run outside and that he went into the woods. He said he heard his truck starting and he saw it being driven away. He said that the truck went behind a church building and that he saw "the little white car from earlier" driving away. He said he called Mr. Smith to come and that as they were driving away, he saw his truck on its side in a field.

Mr. O'Neal testified that he later recovered his truck. He said it had been sideswiped and the window was out.

Mr. O'Neal testified that both his hands were broken in the assault. He said he still needed surgery on one hand. He said he was injured where he was beaten, such as on his back. He said he was hospitalized for two or three days.

Mr. O'Neal identified the Defendant's boyfriend as having kicked and hit him repeatedly and having said, "Kill him, kill him." He did not identify the Defendant in the courtroom and said that his eyesight was poor that day because he was diabetic and his blood sugar was high. He said he was not having these vision problems on October 25. Mr. O'Neal testified that he did not know the Defendant before October 25. He said he had not seen the Defendant since then except in court.

Mr. O'Neal acknowledged a previous conviction for grand theft of a motor vehicle in Florida. He admitted he had a Tennessee conviction for criminal impersonation. He said he had not been offered any consideration in exchange for his testimony.

Claiborne County Sheriff's Officer Larry Martin testified that he records and monitors the telephone conversations of jail inmates. He said he recorded a telephone conversation made by the Defendant on July 31. Detective Melvin Bayless was recalled by the State and testified that the Defendant was the male voice on the recording made by Officer Martin. The recording was played for the jury. In it, the Defendant expressed dismay over his prior

record. The Defendant admitted he "smacked her brains out and kicked him." The Defendant said it "felt great" to hit Ms. Robinson.

Alexandria Robinson testified as a defense witness that she did not know whether she saw the Defendant with a weapon while he was near Mr. O'Neal. She said she did not know whether she saw a tire iron on October 25. She admitted that she had said in previous testimony that she did not see a weapon and never saw anyone with a tire iron. She admitted that the Defendant was not where she could see him during some of the incident and that she did not know what he may have used outside.

Robert Collins testified that he was currently an inmate at the Claiborne County Jail for charges of assault, burglary, aggravated assault, and aggravated robbery, which he said were unrelated to the present case. He said that on October 25, he and the Defendant were at Dorothy Campbell's home, where the Defendant was babysitting Ms. Robinson's son. He said Robinson told the Defendant to come to her house at 10:00 p.m.. He said that he and the Defendant went to Robinson's home at 10:00 or 10:30 and waited at the front door. He said they parked across the street at a church because Robinson's parents did not like the Defendant and did not like the Defendant's being at Robinson's home. He said that she arrived about 11:00 and that Mr. O'Neal arrived a few minutes later. He said that at the time, the Defendant and Robinson were dating and that the Defendant would "go down there every night and stay with her." He said that the Defendant asked O'Neal what he was doing there, that O'Neal said he was there for Robinson to cut his hair, and that Robinson said she was not going to cut O'Neal's hair. He said the Defendant asked O'Neal to leave. He said that O'Neal swung at the Defendant, that he stepped between them, and that he was hit. He said he started hitting O'Neal with a stick he had been whittling. He admitted hitting O'Neal multiple times and said the Defendant tried to take something from O'Neal's truck. He said that O'Neal ran away and that he told the Defendant he should leave because the police might be coming. He denied that the Defendant ever hit O'Neal and said he never saw the Defendant with a tire iron or crowbar.

Mr. Collins testified that at one point, the Defendant and Ms. Robinson went into the house. He said that he went into the house after Mr. O'Neal fled and that the Defendant was knocking on the door and asking whether Robinson would come out or he would have to wait outside the room for her. He said that the Defendant went across a field to his car, which was parked at a church, and that he drove away in O'Neal's truck. He said the truck's keys were sitting on the seat. He denied that the Defendant asked him to take the truck. He said that as he was driving the truck, it flipped, and that he left the scene on foot.

Mr. Collins testified that he never saw the Defendant hit Robinson. He said that he was charged jointly with the Defendant and that he entered a guilty plea. He denied that he had been asked to testify or that he had been promised any consideration for his testimony.

Mr. Collins acknowledged that he had given a statement to the police that was at odds with his testimony. He said that Detective Bayless promised him an "OR bond" if he gave a statement and that he was released a day after giving the statement. He acknowledged on cross-examination that he was told he would "make" an OR bond, not that Detective Bayless would "see to it." He also acknowledged that the paperwork reflected that he gave his statement on October 26 and was released on November 3.

Mr. Collins acknowledged that in his pretrial statement, he said the following: He and the Defendant went to Ms. Robinson's home and waited with sticks behind the home for ten or fifteen minutes. The Defendant told him to hit O'Neal, which he did, and the Defendant kicked O'Neal when O'Neal was on the ground. He did not know whether the Defendant hit Robinson after the two of them went inside the house while he was still outside but "[i]t sounded like it," and he moved O'Neal inside on the Defendant's instruction. The Defendant made a statement about Robinson leaving the Defendant for O'Neal, and the Defendant hit O'Neal with a stick. The Defendant then began hitting Robinson, then O'Neal ran away. He thought the Defendant went after O'Neal with a crowbar and a knife. The Defendant returned with a pocketknife and went to Robinson in the bedroom and said, "Do you see what you made me do now." The Defendant then came out of the bedroom and told him to get some CDs. They went outside, and the Defendant threw him the keys to the truck. The Defendant pulled his knife out when Collins said he did not want to drive. As they were going down the road, the truck was "sliding and catching," and the Defendant got out. A few minutes later, the truck flipped.

Mr. Collins testified that he was scared when he gave the statement. He said the statement was a lie.

Mr. Collins testified that he and Ms. Robinson had had disagreements but that he was not upset enough to assault her. He said he and Mr. O'Neal had cursed at each other before October 25 and "swung at each other once in [a while]" but that he did not have a problem with O'Neal on the date of the incident.

Mr. Collins testified that the Defendant drank Bud Light beer. He denied that they drank beer and waited behind Robinson's home. He maintained that he never saw the Defendant hit Robinson or kick O'Neal. He denied that he hit O'Neal on the Defendant's instruction. He said he threw two cans of beer out of the truck before he took it and said the keys were sitting on the seat. He said that despite the Defendant's having done nothing

wrong, he told the Defendant to leave because the authorities would think they were both involved if the Defendant was present. Collins acknowledged that he had not told the version of events to which he testified to any law enforcement personnel.

David Baker testified that he was a corrections officer at the Claiborne County Jail. He said he was working on the night of October 26, 2007. He said that he assisted Detective Bayless in taking Mr. Collins's statement and that he was present during the entire process. He denied hearing Detective Bayless promise Collins anything or offer an OR bond if Collins gave a statement.

After receiving the proof, the jury found the Defendant guilty of aggravated assault of Patrick O'Neal, attempted aggravated assault of Patrick O'Neal, especially aggravated burglary, robbery, and assault of Alexandria Robinson. The trial court approved of the verdict on each count. The court then sentenced the Defendant to an effective eighteen-year term. This appeal followed.

# I

The Defendant questions whether the trial court erred in approving the verdict in its role as thirteenth juror, whether the trial court erred in denying his motion for judgment of acquittal made after all of the evidence was presented, and whether the evidence is sufficient to support the convictions. The State responds that there was sufficient evidence to support the Defendant's convictions and that there was no trial court error. We agree with the State.

## A. Thirteenth Juror

We consider first the Defendant's contention that in its capacity as thirteenth juror, the trial court erred in approving the verdict. Rule 33(d) of the Tennessee Rules of Criminal Procedure provides that a "trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." The rule "is the modern equivalent to the 'thirteenth juror rule,' whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict." State v. Blanton, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). Our supreme court has held that the rule "imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case, and that approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). The trial court does not have to state explicitly its approval of the verdict as the thirteenth juror. It may simply overrule the motion for a new trial, thereby allowing the appellate court to presume its approval of the jury's verdict. State v. Moats, 906 S.W.2d 431, 434 (Tenn. 1995). On the other hand, this court may reverse the

judgment if "the record contains statements by the trial judge expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court absolved itself of its responsibility to act as the thirteenth juror." Carter, 896 S.W.2d at 122; State v. Brown, 53 S.W.3d 264, 274 (Tenn. Crim. App. 2001).

In the present case, the Defendant does not argue that the trial court abdicated its duty as thirteenth juror or that the court expressed equivocation or dissatisfaction with the verdict. Rather, he contends that the court improperly determined that the weight of the evidence supported the verdicts. The record reflects that the trial court discharged its duty as thirteenth juror and noted verbally on the record his agreement with each of the jury's verdicts at the conclusion of the trial and later in a written order denying the motion for new trial. It is not our function to reweigh the evidence but merely to ensure that the trial court complied with its duty under Rule 33(d). The Defendant is not entitled to relief.

### B. Denial of Motion for Judgment of Acquittal and Sufficiency of the Evidence

The Defendant contends that the trial court erred in denying the motion for judgment of acquittal made after both sides rested their cases and that there is not sufficient evidence to support his convictions. The State responds that the evidence supports the convictions. We agree with the State.

On appellate review of a denial of a motion for judgment of acquittal, we apply the same standard as a question of the sufficiency of the evidence. See, e.g., State v. Brewer, 945 S.W.2d 803, 805 n.2 (Tenn. Crim. App. 1997). Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

### 1. Counts One and Two - Aggravated Assault and Attempted Aggravated Assault of Patrick O'Neal

Count One alleged aggravated assault through the Defendant causing serious bodily injury. Count Two alleged aggravated assault by the Defendant using or displaying a deadly weapon. The jury found the Defendant guilty of the lesser included offense of attempted aggravated assault in Count Two.

-10-

Aggravated assault is defined as:

> (a) A person commits aggravated assault who:
>
> > (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
> >
> > > (A) Causes serious bodily injury to another; or
> > > (B) Uses or displays a deadly weapon[.]

T.C.A. § 39-13-102(a)(1)(A)-(B) (2006). Also, as pertinent to this case, assault is defined as:

> (a) A person commits assault who:
>
> > (1) Intentionally, knowingly or recklessly causes bodily injury to another[.]

Id. § 39-13-101(a)(1). With respect to criminal attempt, Code section 39-12-101 provides:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> > (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
> >
> > (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> >
> > (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Id. § 39-12-101(a)(1)-(3).

The Defendant argues that no physical evidence links him to these crimes. He also highlights Robert Collins's testimony that the Defendant was not involved in the assault and physical harm inflicted on Mr. O'Neal. What the Defendant asks us to do is to reweigh the evidence and assess witness credibility differently than the jury. However, the function of the appellate court is to determine in the light most favorable to the State if there is sufficient evidence from which a rational jury could have found the Defendant guilty beyond a reasonable doubt, not to reassess the proof and reweigh matters of witness credibility.

The State presented proof that the Defendant and Ms. Robinson had recently ended a romantic relationship and that he was angry with Ms. Robinson and Mr. O'Neal because he thought they were dating. The Defendant and Mr. Collins hid and waited for Robinson and O'Neal to arrive, and the Defendant hit O'Neal with a stick and kicked him repeatedly. The Defendant admitted in a recorded telephone call that he kicked O'Neal. Dr. Basile testified that O'Neal had a scalp laceration, a contusion, abrasions, a puncture wound on the left forearm, swollen hands, and a fractured right hand and that these injuries would be painful. O'Neal was hospitalized for two or three days, and at the time of trial he still faced a surgical procedure. There was sufficient evidence that the Defendant intentionally or knowingly caused serious bodily injury to O'Neal. Likewise, there was sufficient proof that the Defendant used or displayed a deadly weapon during the course of events.

The State also notes that the Defendant's argument overlooks his culpability under a theory of criminal responsibility. A defendant is criminally responsible for an offense committed by another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [defendant] solicits, directs, aids, or attempts to aid another person to commit the offense." Id. § 39-11-402(2). Criminal responsibility is not a separate crime but is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). We agree with the State that even if the jury accepted Mr. Collins's testimony that the assaultive offenses were physically carried out by him alone, there was nevertheless sufficient evidence to support the Defendant's guilt of Counts One and Two under a criminal responsibility theory.

Despite the sufficiency of the evidence on these two counts, we note as a matter of plain error an issue that has not been raised by the parties. See T.R.A.P. 36(b). The trial court should have merged these two convictions. The evidence reflects that the serious bodily injury and the use or display of a deadly weapon were both part of a continuous course of conduct in committing an assault. Therefore, the trial court should have merged the convictions. See State v. Pelayo, 881 S.W.2d 7 (Tenn. Crim. App. 1999).

## 2. Count Three - Aggravated Burglary

The Defendant challenges his conviction for aggravated burglary of Ms. Robinson's house. Aggravated burglary is defined in relevant part as entering a habitation without the effective consent of the owner and with the intent to commit a felony, theft, or assault. T.C.A. §§ 39-14-402(a)(1), -403(a).

The basis of the Defendant's challenge is that he could not have committed aggravated burglary of the home because he was living there with Ms. Robinson at the time. Ms. Robinson testified that she and the Defendant had broken up and that he had not been staying at her home overnight for about a week before the offenses. She also testified that the home was owned by her mother and that the Defendant paid no rent. We may not reweigh the evidence. The jury was within its province in accrediting Ms. Robinson's testimony and finding the Defendant guilty of aggravated burglary. He is not entitled to relief.

## 3. Count Four - Robbery

The Defendant also challenges his conviction for robbery relative to Mr. O'Neal's truck. The Defendant relies again on Mr. Collins's testimony that he, not the Defendant, committed the offense. The State responds that the evidence is sufficient because there is proof that both the Defendant and Collins beat Mr. O'Neal and fled the scene in O'Neal's truck. We agree with the State.

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401 (2006). In the light most favorable to the State, the evidence shows that the Defendant and Mr. Collins administered a savage assault on Mr. O'Neal, that during the assault the men demanded to know where his keys were, and that both assailants left the scene in O'Neal's truck. The jury was within its province in accrediting this evidence over the testimony of Collins. The evidence shows that the Defendant and Collins demanded to know where O'Neal's keys were and rifled through his truck while also administering a violent assault on O'Neal, and that after they completed their assault of O'Neal and the Defendant's assault of Robinson, they left the scene in O'Neal's truck after O'Neal ran away. The Defendant is not entitled to relief.

## 4. Count Five - Assault

The Defendant also challenges as "questionable" his conviction of assault of Alexandria Robinson. He notes that Ms. Robinson did not receive any medical treatment for

her injuries. In the light most favorable to the State, the proof includes Robinson's testimony that she had a black eye, knots on the back of her head, and bruises on her face and arm. In addition, Detective Bayless observed shortly after the incident that Robinson had redness around her left eye, swelling and the beginning of a bruise on her face, red marks on her arm, and a small cut on one of her fingers. In a recorded telephone call that was played for the jury, the Defendant admitted hitting Robinson. The evidence is sufficient to support the Defendant's conviction of misdemeanor assault, and he is not entitled to relief.

## II

The Defendant contends that the trial court erred in excluding Mr. Collins's written plea agreement from the evidence. He argues that he was prejudiced because the agreement would have reflected favorably on Collins's credibility. The State responds that the Defendant has waived the issue by failing to object to its exclusion at trial and by failing to make an offer of proof of the document and include it in the appellate record. The State also argues that the document was not relevant and therefore was properly excluded.

The record reflects that Mr. Collins admitted on direct examination by the defense that he pled guilty to the charges for which he was indicted with the Defendant relative to this incident. On redirect examination, defense counsel presented Collins with a document, which Collins acknowledged was his plea agreement in the case. Defense counsel moved for admission of the document, and the trial court denied the motion. The court inquired, "Do you have an objection you want to place on the record?" Defense counsel responded that he did not. The Defendant filed a motion for new trial and two amendments, and the issue was raised in one of the amendments. Therefore, the State is incorrect that the issue has been waived.

We conclude, however, that the Defendant is not entitled to relief. Mr. Collins's guilty plea in the case was not a disputed matter. Collins admitted that he pled guilty and that he actually was guilty of the offenses, and he acknowledged the written plea agreement when he was asked about it. The Defendant did not make a proffer of the plea agreement for purposes of appellate review. See, e.g., State v. Martin, 642 S.W.2d 720, 724 (Tenn. 1982) (holding that trial court erred in denying defendant the opportunity to make an offer of proof, as "such proof may be relevant and necessary to a determination by the appellate courts of whether the trial judge has [ruled properly]"). Without the plea agreement document in the record, we are unable to determine that the agreement was probative of any disputed issue. See T.R.E. 401, 402. The Defendant has not demonstrated that he is entitled to relief.

In consideration of the foregoing and the record as a whole, the convictions are affirmed, but the judgments for aggravated assault and attempted aggravated assault are

vacated. The case is remanded to the trial court for entry of a judgment reflecting that the attempted aggravated assault conviction is merged with the aggravated assault conviction.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE