**STATE of Tennessee, Appellee,**

v.

**Francisco Medan PELAYO, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 5, 1994.

Permission to Appeal Not Applied for to the Supreme Court.

**8**

Barbara F. Arrants, Jeffrey A. DeVasher, Asst. Public Defenders, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Rose Mary Drake, Counsel for the State Victor S. Johnson, III, Dist. Atty. Gen., Kymberly L.A. Hattaway, Asst. Dist. Atty., Nashville, for appellee.

## OPINION

WHITE, Judge.

Appellant raises one issue in this appeal as of right pursuant to Rule 3(b) of the Tennessee Rules of Appellate Procedure. He contends that the trial court erred in allowing separate convictions for two counts of aggravated assault against the same victim and occurring at the same time and place. For reasons set forth in this opinion, we reverse and set aside one of the convictions.

▮ Appellant, Francisco Medan Pelayo, was indicted in a two-count indictment. Count one of the indictment alleged that appellant "on the 10th day of December, 1991, in Davidson County, Tennessee ... intentionally, knowingly or recklessly did cause serious bodily injury to Shelia Washington." The second count of the indictment alleged that appellant "on the 10th day of December, 1991, in Davidson County, Tennessee ... intentionally, knowingly, or recklessly did cause bodily injury to Shelia Washington by the use of a deadly weapon, to wit: a knife." The jury returned guilty verdicts on both indictments and the trial court sentenced appellant to eight years on each count but ordered the sentences run concurrently. Appellant contends that allowing two convictions to stand under the circumstances of this case violates his right to be free from double jeopardy.[1]

Shelia Washington, the victim of the assaults at issue, testified that she had ended her relationship of almost a year with appellant a week before the assault. She testified that when appellant moved from her residence, he took his personal property, including a butcher knife with a seven inch handle which he had used for cooking.

On December 10, 1991, Washington testified that she met Pelayo to do some shopping. Appellant gave her some money and the two agreed to spend the evening togeth-

---

1. Some authorities contend that any defect in allowing multiple convictions for the same offense can be cured by imposing sentence on only one count. Torcia, 4 *Wharton's Criminal Procedure,* § 503 (1990). Because of the mandates of the double jeopardy clause and the collateral consequences of convictions in Tennessee, we disagree. We have previously held that imposing concurrent sentences does not cure the error committed when a single act of criminal conduct is used to convict a defendant of two offenses. *State v. Banes,* 874 S.W.2d 73 (Tenn.Crim.App. 1993), *perm. to appeal denied,* (Tenn.1994). Thus, the manner of the service of the sentence does not correct the defect created by dual convictions for a single offense. *Id.*

er. Although the parties agreed that appellant should come to Washington's house around 10:30 or 11:00 p.m., it was much later when he arrived.

Washington stated that appellant entered her apartment and wanted to sleep with her. When she refused and told him he could sleep on the downstairs sofa, appellant demanded that Washington repay the money he had given her earlier in the day. Washington testified that appellant had been drinking, was not drunk, but was "acting strange."

As the parties began to argue, Washington's daughter entered the room. Washington asked her daughter to lay down beside her because she felt appellant would not bother her if the young child was in the room. After getting louder, appellant left the apartment and went to his car. Washington told her son to "call the police because he's acting crazy."

Upon return appellant had a knife stuck in his pants. When Washington asked her son to call the police, appellant cut the telephone wires and said, "Nobody calls out." Washington instructed her son to go to a neighbor's house and call the police. Appellant began chasing the son and threatened to cut Washington if he left. Washington told the young boy to leave to get help and appellant cut Washington on her arm. As Washington and her daughter tried to escape, appellant cut Washington on the side of her head with the knife.[2]

Washington and her daughter began to run. They knocked on doors in the neighborhood trying to get in. Once outside, Washington testified that appellant stabbed her in the leg with the knife. A friend let Washington in her house and eventually an ambulance arrived which transported Washington to the hospital.

Washington's two children testified and basically confirmed her testimony. A neighbor, Delilah Sharpe, testified that she telephoned 9-1-1, observed the cuts on Washington, and witnessed appellant walking a normal pace to his car, wiping a knife. Two physicians testified to the nature and extent of Washington's injuries and police officers who were called to the scene described what they found at the residence and the victim's injuries. The state rested.

Counsel for appellant argued that the state should "elect which charge they would proceed under." The court initially agreed with the motion, but allowed the state an opportunity to provide authority on its position that the incident supported two separate convictions because "we have two wounds being caused in two separate locations by the defendant. There is a space in time and a space in location, in terms of when the defendant caused the wound to the forearm versus when the defendant caused the wound to the leg."

Following the defense's case in chief, the court declined to require the state to elect between counts. The trial judge observed:

I do think the State is going to have a terrible time maintaining two convictions. But I'm going to send it to the jury on both counts. I don't know what the jury is going to do. But I think the State will have a hard time—would have a hard time maintaining two convictions in this case.

The jury deliberated and returned two guilty verdicts.

At the sentencing hearing, appellant renewed his argument that allowing two aggravated assault convictions to stand violated his right to be free from double jeopardy. The court did not address appellant's argument at sentencing but sentenced the appellant to two concurrent eight year terms.

■ The aggravated assault statute deems a person guilty of aggravated assault who "[c]ommits an assault as defined in § 39–13–101, and (A) [c]auses serious bodily injury to another; or (B) [u]ses or displays a deadly weapon...." Tenn.Code Ann. § 39–13–102(a) (1991 Repl.). An assault occurs when conduct causes bodily injury, fear, or offensive or provocative physical contact to another person. Tenn.Code Ann. § 39–13–101(a) (1991 Repl.). If a criminal actor displays a deadly weapon or causes serious bodily injury to more than one person, that

---

**2.** This injury did not form the basis of either charge.

conduct would justify convictions for each victim involved. Similarly, if a criminal actor caused serious bodily injury to the same person on two distinct occasions, the action would justify multiple convictions for aggravated assault.

The issue raised here is whether the separate stab wounds support separate convictions when they occurred close in time and proximity but not immediately and simultaneously. Resolution of this issue requires consideration of principles of double jeopardy.

■■■ The double jeopardy clauses of the United States and Tennessee Constitutions guard against three evils: a second prosecution after acquittal for the same offense; a prosecution for the same offense after conviction; and multiple convictions or punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The common denominator of each is whether the offenses involved are the same. Before multiple convictions can stand, it must be clear that the offenses supporting the convictions are "wholly separate and distinct." *State v. Goins*, 705 S.W.2d 648, 650 (Tenn. 1986).

■■ The present analysis to determine whether the offenses are the same requires consideration of (1) whether the event is a violation of two distinct statutory provisions, (2) whether either offense is necessarily included in the other, (3) whether the offenses require proof of different elements, (4) whether each offense requires proof of additional facts not required by the other, and (5) whether the legislative intent suggests that one or several offenses were intended. *State v. Black*, 524 S.W.2d 913, 919–20 (Tenn.1975); *Greer v. State*, 539 S.W.2d 855, 858 (Tenn. Crim.App.), *cert. denied*, (Tenn.1976). Because of the distinct issues involved, each case must be resolved on the facts and circumstances presented. *State v. Black*, 524 S.W.2d 913 (Tenn.1975).

In *Black*, our Supreme Court rejected the formerly used single-transaction, single-intent test [3] and held that the "formulation of the various 'tests' into catch words, such as 'same transaction' or 'same evidence' [are not] particularly helpful." 524 S.W.2d at 919. Thus, the court required that each case involve a "close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances." *Id.* Subsequent cases have focused on the nature of the offense,[4] the number of the victims,[5] the type of crime,[6] and the object of the statute.[7]

While our courts have often confronted the issue of whether lesser included offenses are identical so as to bar multiple convictions, few cases have dealt with the issue of multiple convictions for the same offense when only one victim is involved. The context in which this issue has most often arisen is that of sexual offenses. Tennessee courts have frequently ruled on whether convictions can

---

3. We recently detailed the Tennessee precedent which originally focused on whether single incidents constituted a single transaction and involved a single intent. *See State v. Gilboy*, 857 S.W.2d 884, 887 (Tenn.Crim.App.1993). For a thorough discussion of the prior test, *see State v. Irvin*, 603 S.W.2d 121 (Tenn.1980).

4. *See State v. Johnson*, 765 S.W.2d 780 (Tenn. Crim.App.1988), *perm. to appeal denied*, (Tenn. 1989) (no conviction for possession with intent to sell and possession with intent to deliver on the basis of the same evidence).

5. *See State v. Irvin*, 603 S.W.2d 121, 123 (Tenn. 1980) (multiple convictions for homicide from single automobile accident).

6. *See State v. Goins*, 705 S.W.2d 648 (Tenn.1986) (multiple convictions for concealing stolen prop-

erty from victims in three burglaries cannot stand absent proof that defendant received the property on more than one occasion); *State v. Burgin*, 668 S.W.2d 668 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1984) (vaginal intercourse and fellatio on same victim constitute two acts of rape); *Lillard v. State*, 528 S.W.2d 207 (Tenn.Crim.App.), *cert. denied*, (Tenn.1975) (separate acts of intercourse with same victim constitute two rapes).

7. *See State v. Lowery*, 667 S.W.2d 52 (Tenn.1984) (robbery of stores money and larceny of clerk's car is but one crime); *State v. Warren*, 750 S.W.2d 751 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1988) (robbery of victim's purse and taking of vehicle is but one crime).

be sustained upon proof of separate penetrations during the same sexual assault. Arguably, those cases can be distinguished since the gravamen of the rape statute is "penetration" while the gravamen of the aggravated assault statute is injury, fear, or physical contact. An exhaustive search reveals only two cases which confront the issue of multiple convictions for separate injuries perpetrated on the same victim at the approximate same time and location.

The first case, *McCommon v. State*, 130 Tenn. 1, 168 S.W. 581 (1914), concludes that separate charges cannot be maintained when an assault with intent to kill is composed of several different acts committed by the same defendant at or about the same time. In *McCommon*, defendant first shot the victim. The victim did not die but fled from the spot where she was standing at the time of the shooting. Some fifty-five to one hundred feet away, the victim fell to the ground. While laying there, she was pursued by defendant and struck in the head with the barrel of the gun. The *McCommon* Court held that those "two phases of the evidence, while indeed separate acts of [defendant] in point of time, are so connected by a single intent and purpose to do murder in the first degree ... and so nearly related or closely connected in point of time, as to amount in law to a single and continuing transaction, pursuant to and promoted by a single criminal intent." *Id.* 168 S.W. at 582. Quoting from an early edition of *Wharton* on Criminal Law, the Court continued:

> No matter how long an offense may take in its perpetration, it continues but one offense.... When the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unit in swelling a common stream of action, separate indictment lie.

This case, of course, was founded on the single-transaction, single-intent test, a principle previously adhered to but now rejected. Therefore, the persuasiveness of *McCommon* is slight.

More recently, and after the abandonment of the single-transaction, single-intent test, this court, in an opinion written by now Justice Birch, under circumstances strikingly similar to the case before us, disallowed multiple convictions for multiple assaults. In the case of *State v. Ronald St. Clair*, No. 1158, 1990 WL 146519 (Tenn.Crim.App., Knoxville, Oct. 8, 1990), the court found that St. Clair's actions of accosting the victim, threatening her with a knife, dragging her into another room, and choking her severely constituted but one offense. Distinguishing *Black*, Justice Birch held that the robbery and shooting in *Black* were

> discreet events, even though separated by but a few moments. In the case we review, the knife, the assault, and the robbery coalesced into an unmistakable single act of assault with a weapon, clearly accomplished with larceny in mind. Our conclusion, then, is that St. Clair committed a single offense for which he was twice convicted.

*State v. Ronald St. Clair, supra*, slip op. at 3. Finding it difficult to apply the factors set forth in *State v. Black*, 524 S.W.2d 913, 919–20 (Tenn.1975), and reiterated in *State v. Lowery*, 667 S.W.2d 52, 54 (Tenn.1984), the *St. Clair* court chose simply to determine whether the offenses were the same and, if so, whether separate punishments were intended.

Like the court in *St. Clair*, we find it somewhat difficult to apply the factors in this case. While we do not find the test to be easily adaptable to the facts before us, we do note that these two acts do not constitute the violation of separate statutory provisions. As an ancillary standard, and based on the precedent of *St. Clair*, we have endeavored to closely scrutinize the facts to determine whether these offenses are the same and, if so, to inquire whether the legislature intended separate punishments.

In determining whether the two offenses are the same, we must analyze the nature of the offense, including the allegations of the indictment, the elements of the offenses, and the proof. Both counts of the indictment allege assaults against Shelia Washington. The proof established that both of the victim's injuries were caused by a knife, thus supporting a charge under subsection A (serious bodily injury) of Tennessee Code Anno-

tated Section 39–13–102(a)(1). Nonetheless, the state charged appellant with only one count of "serious bodily injury" assault. The second count was charged under subsection B (deadly weapon). While the charges appear to be alternative theories for one offense, the state argued successfully at the trial level that they were not and that the proof supported two separate convictions, one for the arm injury and one for the leg injury.

■ The state's theory is that the initial stabbing of the victim's arm while inside the house constituted an aggravated assault by reason of serious bodily injury and that the subsequent stabbing of the victim's leg while outside the house constituted an aggravated assault by virtue of an assault with a deadly weapon. Given the elements of the offense, the proof would have established either "serious bodily injury"[8] or "deadly weapon assault."

The proof relevant to this issue taken from the victim's testimony is as follows:

Q. What happened after your son left your apartment?

A. That's when he cut me.

.    .    .    .    .

Q. Did you look at where you had been cut?

A. Yes.

Q. What did you see when you looked at where you had been cut?

A. I seen something—I just seen it hanging out, just seen the flesh hanging out.

Q. Was there any blood?

A. Yeah.

Q. What if anything happened after he cut you on the arm?

A. After he cut me I was trying to get my daughter. And we just began to run out the door, because he was cursing and stuff, and I ran. And I know—I knew that if I looked at my arm I would faint right there. And he was still after me. And so we ran, ran all—kept running. Because I tried to run to the furthest place instead of the closest place, in case anybody didn't open their door. And my daughter, I tried to get her up ahead of me. So I sent her somewhere else, but she came back. So I tried to talk to him, because I tried to get his attention off my daughter. And when I turned around to talk to him to get his attention off my daughter, that's when he cut me again on my leg.

.    .    .    .    .

Q. Where did he cut you when you were trying to talk to him?

A. On the leg?

.    .    .    .

Q. You're saying at that point he attacked. The son got up—when Jamie went and got your son, your son ran to get help and he attacked you at that point.

A. Yes.

Q. And then later on he attacked you again outside?

A. Yes.

Q. And he followed you. And the first one was in the arm and that was inside the house?

A. Right.

Q. And the other one was in the leg and that was outside the house.

A. Right.

Q. About how far away from the house?

A. Maybe about twenty feet. I ran for awhile, with him running behind me.

We believe due to the similarity in circumstances that this case requires the same analysis as *St. Clair*. Appellant visited the victim with the intent to spend the night with her as the parties had previously arranged. Upon learning the victim would not agree to sleeping with him, appellant left the victim's residence, went to his automobile, and retrieved a weapon. At that point, appellant formed the intent which he later fulfilled to assault and attack the victim. But for the victim's attempted escape, the multiple stab

---

8. The doctor who treated the victim testified that both wounds were "probably an inch or two deep, ... three inches [long]." Both involved discomfort and cutting or laceration of the superficial skin nerves causing numbness and permanent nerve damage.

wounds would undoubtedly have occurred simultaneously. The fact that the victim attempted to run and separated herself from appellant does not divide the assault into multiple crimes. While the assaults were separated by time and place, we believe that, as in *St. Clair*, they coalesced into an "unmistakable single act," though separated by a few seconds and feet. Thus, we conclude that appellant committed one offense of aggravated assault.

Our conclusion is bolstered by the fact that the aggravated assault statute, though listing several methods of commission, focuses on the act of causing injury, fear, or physical contact. We finding nothing in the statute to indicate that the legislature intended for defendants to be punished separately for each blow or injury.

A simple hypothetical demonstrates the dilemma of concluding otherwise. Since the aggravated assault statute makes it an offense to "[c]ommit[ ] an assault ... [by displaying] a deadly weapon," Tenn.Code Ann. § 39–13–102(a)(1)(B) (1991 Repl.), appellant could have been convicted for brandishing the knife if it caused the victim "to reasonably fear imminent bodily injury," *id.* at – 101(a)(2), even if no injury occurred. How then would the state demonstrate separate assaults unless one speculated that the fear subsided at some point and then reemerged? It would be impossible in most cases to divide a single victim's fear into distinct occurrences. Further, it would produce a peculiar result if the validity of multiple convictions under a single statute depended upon which alternative method of violating the statute

was alleged in the indictment. We would hardly be justified in concluding that the legislature intended multiple punishment for some methods of assault but not for others absent some explicit expression of that intent.

Therefore, we conclude that the factual circumstances of this case do not merit separate convictions. Further, we are convinced that the legislature did not intend for defendants committing acts of aggravated assault to be punished separately for each individual blow. This opinion is not intended to suggest that separate blows inflicted on the same victim at times and places more distinct than involved in this case cannot provide sufficient grounds for multiple convictions. We suggest that each case requires a careful review of the facts and circumstances, an application of the *Black* factors, if possible, and a conscientious consideration of the temporal and geographic proximity of the separate acts.

For the reasons set forth, we reverse appellant's conviction on count two of the indictment and remand for the preparation of a modified judgment.

JONES and WADE, JJ., concur.