# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 19, 2014 Session

## STATE OF TENNESSEE v. JANICE KIRKLAND

**Appeal from the Circuit Court for Blount County**
**No. C20685    Tammy Harrington,  Judge**

_____

**No. E2013-02243-CCA-R3-CD - Filed December 11, 2014**

_____

A Blount County jury found the Appellant guilty of two counts of assault against an unacquainted homeowner. On appeal, the Appellant contends that the trial court erred by subjecting her to double jeopardy in convicting her of two counts of assault rather than one. She also challenges the sufficiency of the evidence to sustain the convictions. Because we find that the two convictions are based on separate offenses under applicable law, and because a rational jury could find the Appellant guilty based on the evidence presented, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed.**

ROBERT L. JONES, SP.J., delivered the opinion of the court, in which  JOHN EVERETT WILLIAMS and CAMILLE MCMULLEN, JJ., joined.

Steven B. Ward, Madisonville, Tennessee, for the Appellant, Janice Kirkland.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner and John H. Bledsoe, Assistant Attorneys General; Mike Flynn, District Attorney General; and Betsy Smith, Assistant District Attorney General, for the Appellee, the State of Tennessee.

## OPINION

### I. Procedural History and Facts

At approximately 4:00 on the morning of October 19, 2011, Brett Lindsey and his wife awoke to the sound of someone shouting and pounding on their front door. Thinking it was his aunt, Mr. Lindsey opened the door and found instead a stranger standing on his porch. The woman was the Appellant, Janice Kirkland. Stepping close to Mr. Lindsey and pointing her finger in his face, she shouted a stream of curses and threats about Mr. Lindsey's

brother and his brother's Senate campaign. Mr. Lindsey neither has a brother nor knew anyone involved in a campaign for the Senate. After telling his wife to call 911, Mr. Lindsey stepped outside, locking the door behind him.

Mr. Lindsey testified that he tried without success to convince the Appellant that she had made a mistake. He asked repeatedly that she leave his property. The Appellant continued to berate and threaten Mr. Lindsey, saying that she would kill him and make his family suffer. Stepping off the porch into the rain, Mr. Lindsey attempted to shepherd the Appellant away from his home and family and toward her car, which was parked in the driveway. As he did so, the Appellant began "rummaging" through her purse as if looking for something. Based on her threats and behavior, Mr. Lindsey feared that she might have a gun in the bag. He reached his hands out over the Appellant's, not touching her, but prepared to stop her if she did pull a gun. The Appellant then punched him in the face, hitting him on the cheekbone. At that point, Mr. Lindsey grabbed the purse, pulling the Appellant off balance and causing her to fall. Several pill bottles spilled from the purse onto the ground in the scuffle. Mr. Lindsey picked them up and dropped them back into the purse. He did not put his hand in the purse or look inside it. He testified that he was afraid the Appellant might have hypodermic needles inside, and he did not want to "get stuck with anything."

The Appellant demanded that Mr. Lindsey return her purse. To get her as far away from his family as possible, Mr. Lindsey walked to the end of his driveway. The Appellant followed, still insisting that he return her purse. When they reached the street, Mr. Lindsey stood at the end of the drive and waited for the police.

Sergeant Chad Simpson of the Maryville Police Department testified that when he arrived at the Lindsey home at approximately 4:30 a.m., he saw Mr. Lindsey standing in the rain wearing only a white t-shirt and boxer shorts. The Appellant sat on the opposite side of the driveway from Mr. Lindsey. Because radio dispatch had reported that a woman caused the disturbance, Sergeant Simpson spoke with the Appellant first. He asked if she would like to sit in his patrol car to get out of the heavy rain. He explained that Maryville Police Department policy required anyone placed in the back of a patrol car to be handcuffed. The Appellant agreed to the restraints. Sergeant Simpson testified that the Appellant was "a little bit out of control, irate, upset, mad … [and] loud." She told him that Mr. Lindsey had taken her purse and that he was hiding her sister in his house. She also told the officer that she had hit Mr. Lindsey.

Sergeant Simpson testified that Mr. Lindsey was polite, fairly calm, and "a little relieved" that Sergeant Simpson was there. He gave Sergeant Simpson the Appellant's purse. Mr. Lindsey corroborated the Appellant's admission that she had hit him, and Sergeant Simpson noticed a red mark on Mr. Lindsey's cheek that seemed to confirm both statements.

Sergeant Simpson testified that the Appellant's purse was "really heavy." When he looked inside, he found a revolver loaded with "four rounds of .38 special ammo." Sergeant Simpson placed the purse and the gun in the trunk of his patrol car to be deposited in the evidence locker at the Maryville Police Department.

By this time, another officer had arrived on the scene. Leaving the second officer to watch the Appellant, Sergeant Simpson went into the house with Mr. Lindsey. After speaking further with Mr. Lindsey and his family and ascertaining that the Appellant's sister was not in the house, Sergeant Simpson took the Appellant to jail.

## II. Analysis

### A. The Dual Convictions for Assault

A Blount County jury found the Appellant guilty of two counts of assault and the trial court sentenced her to two concurrent sentences of 11 months and 29 days, suspended to supervised probation. The Appellant now argues that the dual convictions subjected her to double jeopardy. She contends that, as the incident involved one continuous altercation with a single victim, she should have been charged with a single offense only. The State counters that the trial court did not err because the two charges were for two separate and distinct types of assault. We agree with the State.

Whether multiple convictions constitute a violation of double jeopardy is a mixed question of law and fact, and is therefore reviewed de novo on appeal, without a presumption of correctness on the part of the trial court. *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009).

The Double Jeopardy Clause, included in the Bill of Rights and applied to the States through the Fourteenth Amendment, provides that no person "shall … be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Additionally, article 1, section 10 of the Tennessee Constitution provides that "no person shall, for the same offense, be twice put in jeopardy of life or limb." The Tennessee Supreme Court has found no "textual reason or historical basis" for interpreting the two constitutional clauses differently. *State v. Watkins*, 362 S.W.3d 530, 533 (Tenn. 2012).

The United States Supreme Court has determined that the Double Jeopardy Clause provides protection against unfair prosecution in three circumstances: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against subsequent prosecution for the same offense after conviction; and (3) protection against multiple

punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493 (1984); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). This appeal is based on the last of these protections.

More than eighty years ago, the United States Supreme Court established a two-part test to analyze questions of double jeopardy involving multiple punishments, based on separate statutes, for a single offense. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). First, the court must determine if the offenses were part of a single continuous incident, or if they were separate and distinct events. *Id.* at 302. If the court concludes that the offenses were part of a continuous event, the court must then move to the second step of the analysis, which is to determine legislative intent. In deciding if the legislature intended to allow multiple punishments for the offenses charged, the court determines if each of the separate statutory provisions requires proof that the other does not. *Id.* at 304 (citing *Gavieres v. United States*, 220 U.S. 338 (1911)). "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* (quoting *Morey v. Commonwealth*, 108 Mass. 433 (1871)).

However, as the Tennessee Supreme Court noted in its decision in *Watkins*, the analysis is slightly different when a defendant has been convicted of multiple violations of the *same* statute during the same occurrence. *Watkins*, 362 S.W.3d at 543. Such cases are called "unit-of-prosecution" claims. *Id.* In deciding unit-of-prosecution claims, courts must determine "what the legislature intended to be a single unit of conduct for purposes of a single conviction and punishment." *Id.* (citing George C. Thomas III, *A Unified Theory of Multiple Punishment*, 47 U. Pitt. L. Rev. 1, 11 (Fall 1985)). In doing so, courts must neither restrict nor expand "a statute's scope beyond that which was intended." *State v. Pendergrass*, 13 S.W.3d 389, 394 (Tenn. Crim. App. 1999). Should the legislature fail to clearly delineate multiple units-of-prosecution within a single statute, any ambiguity must be resolved in favor of viewing the conduct as a single transaction rather than multiple offenses. *State v. Desirey*, 909 S.W.2d 20, 29 (Tenn. Crim. App. 1995); *see Bell v. United States*, 349 U.S. 81, 83-84 (1955). "To ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishments for actions that are not plainly and unmistakably proscribed." *State v. Hawkins*, 406 S.W.3d 121, 137-38 (Tenn. 2013) (quoting *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010)).

Assault is defined under Tennessee law, in pertinent part, as follows:

> (a)  A person commits assault who:
>> (1)     Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

(b)(1) Assault is a Class A misdemeanor unless the offense is committed under subdivision (a)(3), in which event assault is a Class B misdemeanor…

Tenn. Code Ann. § 39-13-101 (2010). In codifying the crime of assault, the Tennessee Legislature described assault offenses in three distinct ways in § 39-13-101(a)(1)-(a)(3). The three subdivisions of § 39-13-101(a) each describe a different type of unlawful conduct. The Legislature went so far as to state in § 39-23-101(b) that the offenses under § 39-13-101(a)(1) and § 39-13-101(a)(2) carry different penalties than offenses under § 39-13-101(a)(3).

It seems clear to this Court that the Legislature intended to define at least three types of assault under the statute. Each distinct type of offense may be distinguished from the others. The construction of this statute allows for multiple offenses, and therefore, multiple sentences under the law.

The Appellant relies on this Court's decision in *State v. Pelayo*, 881 S.W.2d 7 (Tenn. Crim. App. 1994) to support her contention that the two assaults should have been merged. In *Pelayo*, the Court examined the question of multiple convictions under the same statute and found that "it must be clear that the offenses supporting the convictions are 'wholly separate and distinct.'" *Id*. at 10 (citing *State v. Goins*, 705 S.W.2d 648, 650 (Tenn. 1986)). The Appellant claims that the only assault in the present case occurred when she struck Mr. Lindsey.

The State argues that the Appellant was charged with two separate counts of assault because she committed two distinct forms of assault: the first by punching the victim in the face and the second by causing him to reasonably fear that the Appellant might pull a gun from her purse and shoot him. Count One was a violation of Tenn. Code Ann. § 39-13-101(a)(1), and Count Two was a violation of Tenn. Code Ann. § 39-13-101(a)(2).

The present case is distinguished from *Pelayo* because that case involved one prolonged attack broken into two incidents "separated by a few seconds and feet." *Pelayo,* 881 S.W.2d. at 13. The *Pelayo* Court found that "but for the victim's attempted escape, the multiple stab wounds would undoubtedly have occurred simultaneously." *Id*. at 12-13.

Additionally, *Pelayo* involved only one weapon, a kitchen knife. In the present case, the Appellant struck Mr. Lindsey with her fist and also caused him to fear that he would be shot with a gun that the Appellant might pull from her purse—and she did, in fact, have a gun in her purse.

Having examined the charging statute under the "unit-of-prosecution" standard as outlined by the Tennessee Supreme Court in *Watkins* and having found sufficient reason to hold that the Tennessee General Assembly intended for Tenn. Code Ann. § 39-13-101 to codify different types of assaults, we conclude that the Appellant's two convictions for assault did not subject her to double jeopardy. The convictions breach neither the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, nor article 1, section 10 of the Tennessee Constitution. The Appellant is not entitled to relief on this matter.

## B. Sufficiency of the Evidence

The Appellant also challenges the sufficiency of the evidence to support any conviction in this case. She makes no claim about the sufficiency of the evidence for the assault committed under Count Two, and she claims self-defense regarding the assault charged under Count One.

The applicable standard of review on appeal when the sufficiency of the convicting evidence is challenged is whether, after viewing the evidence in the light most favorable to the prosecution, "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011), (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The State is entitled to the strongest legitimate view of the evidence and to all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)). The standard of review is identical for both direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). A jury verdict against the Defendant, approved by a trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the Appellant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003).

Viewed in the light most favorable to the State, the evidence shows that the Appellant threatened to kill Mr. Lindsey and to "make his family suffer." While maintaining a constant barrage of threats and abuse, she actively searched through her purse. Mr. Lindsey feared that she would pull a gun from her bag and shoot him. Sergeant Simpson later found a pistol in

the Appellant's purse. There is sufficient evidence for a rational jury to find that the Appellant's actions meet the elements of assault under Tenn. Code Ann. § 39-13-101(a)(2).

Considering now the second assault charge, it is uncontroverted that the Appellant struck Mr. Lindsey, causing bodily injury in violation of Tenn. Code Ann. § 39-13-101(a)(1). The Appellant admits to punching Mr. Lindsey, and Sergeant Simpson testified that both Mr. Lindsey and the Appellant told him she had punched the victim. Sergeant Simpson saw the red mark that the blow made on Mr. Lindsey's face.

The Appellant claims, however, that she struck Mr. Lindsey in self-defense after he tried to take her purse. She bears the burden of proving this defense on appeal. *Evans*, 108 S.W.3d at 237. However, the evidence does not support her assertion of self-defense.

The section of the Tennessee Code defining self-defense states that:

> A person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.

Tenn. Code Ann. § 39-11-611(b). The Appellant's claim of self-defense under Tennessee law is not supported by her actions. Although she was not charged with trespassing, the Appellant was arguably engaged in unlawful activity in a place where she had no right to be. The statute instead validates Mr. Lindsey's actions in taking the Appellant's purse: The victim was lawfully on his own property, with no duty to retreat before using whatever force he reasonably believed necessary to protect himself from the possibility of being shot. He did not touch the Appellant; he grabbed her purse, using only the force necessary to take it from her, and only after she punched him.

Assuming *arguendo* that Mr. Lindsey was actually trying to take the Appellant's purse before she hit him, the evidence shows he would have done so only because he feared for his safety. Tenn. Code Ann. § 39-11-611(e)(2) states that the "use of force against another is not justified if the person using force provoked the other individual's use or attempted use of unlawful force." The Appellant was unjustified in hitting Mr. Lindsey because she provoked his attempt to take her purse by leading him to think she might shoot him. The Appellant cannot claim self-defense as a justification for her criminal actions against Mr. Lindsey.

Based on these facts, sufficient evidence was presented for a rational jury to infer that the Appellant committed two separate and distinct acts of assault against Mr. Lindsey.

## CONCLUSION

In consideration of the foregoing, the two convictions for assault are affirmed.


_____
ROBERT L. JONES, SPECIAL JUDGE